**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

BRITTANY KNIGHT,

       Petitioner,

v.                             CASE NO.  4:17cv464-RH/CAS

SHERIFF OF LEON COUNTY,

       Respondent.

_____/


## ORDER DISMISSING THE CASE AS MOOT


This proposed class action presents a constitutional challenge to the bail practices of the state court in Leon County, Florida. The record would support a finding that the court routinely sets unaffordable bail with the effect, and sometimes with the purpose, of detaining a defendant pending trial. The court set unaffordable bail for Brittany Knight.

Ms. Knight filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241. The respondent is the Sheriff of Leon County—the official in whose custody Ms. Knight was held when she filed this action.

Ms. Knight seeks to represent a class of individuals detained on unaffordable bail in Leon County. Pending are cross-motions for summary judgment. Also pending is a motion to certify the class.

The claim that some of the proposed class members are being detained unconstitutionally is strong. But Ms. Knight herself is not entitled to relief for two reasons. First, any constitutional violation she suffered had been remedied or no longer had any effect by the time she filed this petition. Ms. Knight was not entitled to relief on her individual claim when she filed it. Second, Ms. Knight entered a nolo contendere plea five days after she filed this petition and is serving the agreed prison sentence. Her individual claim is moot.

That a named plaintiff's individual claim becomes moot does not, without more, deprive the named plaintiff of standing to pursue class claims. But Ms. Knight's claim was unfounded when she filed it. The claim is not typical of the class claims, and she is not an adequate class representative. This order denies her motion to certify a class. Absent class certification, Ms. Knight's individual claim must be dismissed as moot, ending the case.

## I. Summary of the Claim

Ms. Knight's claim rests on two propositions. The first is that unaffordable bail is constitutionally equivalent to pretrial detention. The second is that pretrial detention is constitutional only if a court finds—Ms. Knight says by clear and

convincing evidence after timely notice and an adequate opportunity to be heard—

that no alternative is available that would reasonably assure the defendant's

appearance as required and the safety of the community.

Ms. Knight's claim does not address the separate question of how long a

defendant can be detained from the time of arrest until an initial bail hearing. *See*

*Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018).

## II. Facts and Proceedings

An infant died in Ms. Knight's care in Leon County on June 9, 2015. The

record includes allegations that Ms. Knight was operating an illegal daycare center,

was impaired, and gave the child an overdose of sleep medicine. The record

includes a proffer that, after the death, Ms. Knight went to her mother's home in

Cairo, Georgia, perhaps 35 miles away, and that at some later point, Ms. Knight

became employed at another childcare facility.

More than a year after the death, on June 17, 2016, a Leon County grand

jury indicted Ms. Knight for aggravated manslaughter. The court issued a capias

for Ms. Knight's arrest setting bail at $500,000. Ms. Knight was arrested that same

day. At her first appearance on June 18, 2016, bail remained at $500,000, a result

apparently required because the capias did not authorize a court to reduce bail at

first appearance. Ms. Knight was unable to make bail and so remained in custody.

On June 28, 2016, Ms. Knight moved to reduce bail. The court conducted a hearing on the motion on August 11, 2016. Ms. Knight said she could afford bail of no more than $10,000. She noted her lack of a criminal record and her ties to the community. The court reduced bail to $250,000 and imposed nonmonetary conditions of release: that Ms. Knight submit to drug testing and have no contact with children other than her own or with the victim's mother. Ms. Knight could not make bail and so remained in custody.

On September 23, 2016, Ms. Knight filed a petition for a writ of habeas corpus in the Florida First District Court of Appeal. She asserted that $250,000 was excessive, that she had in effect been detained, and that detaining her without considering alternatives was unconstitutional. The court denied the petition on February 21, 2017. The court said that to prevail on the claim that $250,000 was excessive, Ms. Knight would have to show that any amount over $10,000 was excessive, because she had said she could afford nothing more than that. The court rejected without explanation the contention that any amount above $10,000 would be excessive. And the court said any further constitutional claim had not been presented in the trial court and thus could not be considered on the habeas petition.

On February 28, 2017, Ms. Knight filed in the trial court a second motion to reduce bail. When the trial court did not take up the motion, Ms. Knight sought relief in the First District. That court ordered the state to notify it by April 28, 2017

whether the trial court had ruled on the motion to reduce bail. Perhaps not coincidentally, the trial court conducted a hearing on the motion on April 28.

Ms. Knight made essentially the same arguments she now makes in this court: that unaffordable bail is unconstitutional unless the court finds, based on clear and convincing evidence, that no alternative is available that would reasonably assure the defendant's appearance as required and the safety of the community. The trial court implicitly rejected the constitutional argument but noted that the critical factors in setting bail are risk of nonappearance and danger to the community. The court explicitly found that Ms. Knight posed "a danger to the community." Tr. of Apr. 28, 2017 Hr'g at 11, ECF No. 23-2 at 63. The court seemed to find also that Ms. Knight posed a risk of nonappearance; the court said she "fled to Cairo" after the death of the child. *Id*.

Ms. Knight filed another petition for a writ of habeas corpus in the First District on May 4, 2017. The court denied the writ on October 2, 2017 in an order consisting of one sentence and a citation.

Shortly before October 9, 2017, Ms. Knight agreed to accept the state's plea offer, under which she would plead nolo contendere to the charge of aggravated manslaughter and receive a nine-year prison sentence. On October 9, a plea hearing was set for October 18. On October 13, Ms. Knight filed this federal petition, challenging her pretrial detention. On October 18, Ms. Knight appeared in

state court and entered the nolo plea. The state court accepted the plea and

sentenced Ms. Knight to nine years. She is serving that sentence.

When Ms. Knight entered the plea, she had been in custody for 16 months.

Despite her repeated efforts, no state court had addressed her constitutional claim

on the merits.

### III. The Constitutional Limits on Detention and the State Courts' Failure to Address Them

The presumption of innocence is a bedrock principle of our criminal justice

system. A defendant cannot be punished until the defendant is convicted at trial or

enters a plea of guilty or nolo contendere. A defendant may be detained pending

trial only when necessary to serve a compelling interest. *See, e.g.*, *Pugh v.

Rainwater*, 572 F.2d 1053, 1056-57 (5th Cir. 1978) (en banc) (recognizing that the

right to pretrial release "serves to prevent the infliction of punishment prior to

conviction" and that unless this right is preserved, "the presumption of innocence,

secured only after centuries of struggle, would lose its meaning").

A system that unnecessarily detains defendants pending trial based on

inability to make bail—that detains defendants on this basis without regard to the

state's compelling interests in detention—is unconstitutional at several levels.

First, such a system discriminates based on poverty. Defendants with enough

money are released, while those with less money are detained. Nobody would

defend the constitutionality of a system that explicitly said defendants with a net

worth of $25,000 or more would be released prior to trial while those with a lower net worth would be detained. But a system that sets bail at $25,000 (or, assuming the availability of sureties who charge a 10% premium, at $250,000), without regard to the state's compelling interests in detention, is nearly the same thing.

Second, detaining a defendant pending trial sometimes has an unwarranted coercive effect, providing an incentive to plead guilty or nolo contendere in exchange for a time-served sentence as the only way to get out of jail without further delay. This record includes an assistant state attorney's testimony that she has sometimes used pretrial detention as a factor in plea bargaining.

Third, defendants who eventually are acquitted—some are—but who have been unnecessarily detained will in effect have served time for offenses they did not commit or for which they were not convicted.

Fourth, the same is true for defendants against whom charges are dropped. This category may include defendants whose plight never comes to the attention of any judge. This is so because when charges against a detained defendant are dropped, the defendant is simply released, with no hearing and often no explanation.

This does not mean, however, that pretrial detention is always unconstitutional. A state may detain a defendant pending trial when necessary to serve a compelling interest. Thus a state may detain a defendant when necessary to

reasonably assure the defendant's appearance as required and the safety of the

community. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 754 (1987);

*Campbell v. Johnson*, 586 F.3d 835, 842-43 (11th Cir. 2009).

When detention serves a compelling interest, a state may accomplish the

result through an explicit detention order, or the state may accomplish the same

result by setting unaffordable bail. A rose by any other name. But when detention

does not serve a compelling interest, unaffordable bail is excessive. "[T]he test for

excessiveness is whether the terms of release are designed to ensure a compelling

interest of the government, and no more." *Campbell*, 586 F.3d at 843 (citing

*Salerno*, 481 U.S. at 753–54). As *Pugh* put it, "[b]ail set at a figure higher than an

amount reasonably calculated" to assure the defendant's appearance—or, though

not noted in *Pugh*, to serve another compelling interest—"is 'excessive' under the

Eighth Amendment." *Pugh*, 572 F.2d at 1057.

These settled authorities make curious the state courts' treatment of Ms.

Knight's claims. And on this federal habeas petition under 28 U.S.C. § 2241, the

state courts' rulings are not entitled to the deference they would garner under 28

U.S.C. § 2254. *See, e.g.*, *Medberry v. Crosby*, 351 F.3d 1049, 1062 (11th Cir.

2003); *Phillips v. Court of Common Pleas, Hamilton Cty.*, 668 F.3d 804, 810 (6th

Cir. 2012) (collecting cases); *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir.

2011); *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007); *Stow v.*

*Murashige*, 389 F.3d 880, 885-88 (9th Cir. 2004). Federal review of the state courts' rulings on constitutional issues is de novo. *See Martinez*, 644 F.3d at 242; *Walck*, 472 F.3d at 1234-35; *Stow*, 389 F.3d 880.

On Ms. Knight's first habeas petition in the First District Court of Appeal, the court concluded that Ms. Knight's statement that she could not make bail greater than $10,000 foreclosed her claim. The apparent assertion was that some amount greater than $10,000 was inherently reasonable without regard to whether it was necessary to assure Ms. Knight's appearance or the safety of the community. This had it exactly backwards. That a greater amount was unaffordable meant the state was obligated to proffer a compelling interest supporting the amount, precisely as Ms. Knight asserted. A bail amount that is in fact unaffordable cannot be held constitutionally permissible based only on some normative assessment of the amount, detached from constitutionally permissible grounds for detention. Unaffordable bail, in the absence of constitutionally permissible grounds for detention, is excessive. *See, e.g.*, *Pugh*, 572 F.2d at 1057.

At a hearing back in the trial court on Ms. Knight's renewed motion to reduce bail, the court responded to Ms. Knight's citation of federal authorities by asking whether there were state-court cases to the same effect—and finding none, the court virtually ignored the federal claim. *See* Tr. of Apr. 28, 2017 Hr'g at 5, ECF No. 23-2 at 57. But the United States Constitution applies in state court, just

as in federal court, and decisions of the United States Supreme Court are equally binding there. Decisions of the Eleventh Circuit, though not as clearly binding, are at least worthy of consideration. In any event, the state court addressed danger and flight risk but did not address alternatives that would address these concerns, implicitly rejecting Ms. Knight's claim that detention is permissible only when no alternative would adequately serve the state's compelling interests.

When Ms. Knight filed another habeas petition in the First District challenging the trial court's ruling, the First District again ruled against her. The court gave no explanation but cited a case for the unremarkable propositions that unaffordable bail is not necessarily excessive and that a trial court must consider many issues in setting bail. This did not acknowledge, let alone respond to, Ms. Knight's constitutional claim—the claim that unaffordable bail is excessive unless necessary to serve a compelling interest.

In sum, the state courts never explained their rejection of Ms. Knight's constitutional claim. Perhaps she did not make her position sufficiently clear. Or perhaps the courts thought her position so plainly unfounded that it was not worthy of a response. If so, the courts were wrong. Ms. Knight's constitutional claim was substantial. *See ODonnell v. Harris Cty.*, 892 F.3d 147, 157-163 (5th Cir. 2018); *Carliste v. Cantrell*, 329 F. Supp. 3d 296, 310-16 (E.D. La. 2018); *Weatherspoon v. Oldham*, No. 17-cv-2535, 2018 WL 1053548 *4-8 (W.D. Tenn. Feb. 26, 2018);

*Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 768-771 (M.D.

Tenn. 2015); *Jones v. City of Clanton*, No. 2:15-cv-34, 2015 WL 5387219 at *2-4

(M.D. Ala. Sept. 14, 2015).

### IV. Whether Detaining Ms. Knight Was Substantively Unconstitutional

The state courts' failure to address Ms. Knight's constitutional claim does

not necessarily mean that Ms. Knight was unconstitutionally detained. As set out

above, the state trial court eventually found that Ms. Knight posed a danger to the

community. The court apparently found implicitly that she posed a risk of

nonappearance. Detaining an individual who poses a danger to the community or

flight risk, at least in the absence of alternatives that would adequately address

these concerns, is not unconstitutional. *See, e.g.*, *Salerno*, 481 U.S. at 754.

In this § 2241 proceeding, the state courts' rulings on constitutional issues

are subject to de novo review. But the same is not true on nonconstitutional issues,

including, for example, whether the evidence supports the findings on

dangerousness or flight risk. Absent constitutional error, state-court bail

determinations are not subject to federal review at all. Findings of fact that support

a bail determination in a specific case are reviewable, if at all, only under a

deferential standard, even when the bail determination is challenged on

constitutional grounds.

These standards of review apply in this case as follows. First, the state courts' implicit ruling that unaffordable bail can be imposed even when a defendant does not pose a danger to the community or flight risk is reviewable de novo. The state courts' implicit ruling that unaffordable bail can be imposed even when alternatives are available that would adequately address danger to the community and flight risk is reviewable de novo. But the state trial court's explicit ruling that Ms. Knight posed a danger to the community is reviewable only with considerable deference. *See, e.g.*, *Simon v. Woodson*, 454 F.2d 161, 163-65 (5th Cir. 1972). So is the state trial court's implicit ruling that Ms. Knight posed a flight risk.

One could argue both sides of the question whether Ms. Knight posed a danger to the community or flight risk. There was probable cause to believe she committed a terrible crime against a defenseless child; this was evidence of danger. On the other hand, for a year the state brought no charges and took no action to prevent Ms. Knight from working around children; absent an explanation, this calls into question the state's assertion that she posed a substantial risk. There was a suggestion that Mr. Knight "fled" to her mother's home 35 miles away, but visiting one's mother after an event of this nature hardly seems indicative of an intent to flee. Moreover, Ms. Knight was arrested the same day a warrant was issued;

finding her apparently was not hard. Ms. Knight had no criminal history and had abundant family in the area.

The answer on these issues, for purposes of this § 2241 proceeding, is this. The state trial court's explicit finding that Ms. Knight posed a danger to the community and the implicit finding that she posed a flight risk are sufficient to survive the deferential standard of review.

The result is different on the question whether any danger or flight risk posed by Ms. Knight could be adequately addressed through alternative means. The state courts did not accept Ms. Knight's argument that consideration of alternatives was constitutionally required. And so the state courts did not address the issue. On this issue—the availability of alternatives—there is no state-court finding to which a federal court can defer. *See, e.g.*, *Brewster v. Hetzel*, 913 F.3d 1042, 1051 (11th Cir. 2019) (holding that even under 28 U.S.C. § 2254, federal review is de novo on an issue the state court did not address at all).

Two aspects of the state-court rulings do not change this. First, by setting bail at all, the state courts could be said to have determined that detention was not necessary to protect the safety of the community—that Ms. Knight could safely be released. But the record established beyond question that the bail was unaffordable; as a practical matter, the bail settings were detention orders, no more and no less. Second, on August 11, 2016, the state trial court imposed release

conditions: that Ms. Knight submit to drug testing and have no contact with children other than her own or with the victim's mother. But the court simultaneously kept in place the plainly unaffordable bail. It cannot be said that the court found these conditions sufficient to address Ms. Knight's danger to the community.

In sum, the substantive constitutional issues break down this way. Ms. Knight's unaffordable bail was equivalent to detention. The detention was constitutional only if Ms. Knight posed a danger to the community or risk of nonappearance—the state has proffered no other compelling interest supporting detention. The state courts' implicit contrary rulings on these constitutional issues are entitled to no deference and are incorrect. But the state trial court's explicit finding that Ms. Knight posed a danger to the community and its implicit finding that Ms. Knight posed a flight risk—findings that the First District Court of Appeal apparently upheld—are entitled to deference and cannot be set aside in this § 2241 proceeding. The question whether there were alternatives to detention that would adequately serve the state's compelling interests was not addressed in state court and would properly be resolved in this court de novo. As it turns out, a ruling on that issue is not necessary—the outcome in this § 2241 proceeding would be the same either way.

## V. Unconstitutional Procedures

In addition to the claim that she could not properly be detained at all, Ms. Knight asserts she was subjected to unconstitutional procedures. The state court detained Ms. Knight for more than 10 months before explicitly finding she posed a danger to the community. She argues with substantial force that the failure to provide a prompt opportunity to be heard on dangerousness, risk of flight, and the availability of alternatives to detention was unconstitutional.

She is not entitled to relief on this basis in this § 2241 proceeding because any violation was cured before she filed this proceeding. The state trial court conducted a hearing on April 28, 2017. At that hearing, Ms. Knight was represented by counsel and had an opportunity to present evidence and argument as fully as she wished. She received full due process. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976); *J.R. v. Hansen*, 803 F.3d 1315, 1321 (11th Cir. 2015).

To be sure, the state court ruled against her. So did the First District Court of Appeal when she sought review there. But due process means notice and an opportunity to be heard—there is no guarantee of a favorable result. Ms. Knight says, in effect, that the court missed the issue, but missing the issue, without more, is not a due-process violation.

## VI. Availability of Relief in this § 2241 Proceeding on Ms. Knight's Individual Claim

What has been said to this point brings us here.

First, because any procedural violation was cured before Ms. Knight filed this action, any such violation does not provide a basis on which Ms. Knight may obtain individual relief. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983) (holding that a person who had been subjected to a chokehold in the past had no standing to seek injunctive relief against the city's practice of using chokeholds because there was not a "sufficient likelihood that he will again be wronged in a similar way"); *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999).

Second, detaining Ms. Knight was substantively unconstitutional only if (1) as a matter of law, a court may detain a defendant who poses a danger to the community or flight risk only if no alternative is available that would adequately address those concerns and (2) no alternative was available that would adequately address those concerns for Ms. Knight. These are the issues that were noted but on which no ruling was made in section IV above.

For purposes of this action, these issues must be addressed as of October 13, 2017, the date when Ms. Knight filed this action. This is so based on the *Lyons* principle: an individual does not have standing to assert a claim for prospective relief based on a past violation unless the individual is currently being affected or

is likely to be affected in the future by the violation or by another violation of the same kind.

This means that, to prevail on her substantive claim in this action, Ms. Knight must show that her detention was unconstitutional as of October 13, 2017. It was not. At that date, Ms. Knight had already agreed to enter a plea under which she would serve nine years in prison. The plea proceeding was set for just five days ahead, on October 18, 2017. Ms. Knight had been detained—rightly or wrongly— for more than a year. Release at that point would have posed a risk of nonappearance substantially greater than existed earlier. Had I been called on to decide on October 13, 2017 whether any alternative would adequately serve the state's compelling interests, I would have said no. I would have continued Ms. Knight's detention.

Any constitutional violation had been cured or no longer had any effect when Ms. Knight filed this action. Under the *Lyons* principle, she was not entitled to relief.

## VII.  Class Certification

Federal Rule of Civil Procedure 23 does not apply to habeas proceedings. But as a matter of discretion, a court may certify a habeas class on analogous grounds. *See, e.g.*, *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974); *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975); *Napier v.*

*Gertrude*, 542 F.2d 825, 828 n.2 (10th Cir. 1976). *But see Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) (holding that a habeas petition can be certified under Rule 23).

This order does not certify a class for two reasons.

First, in a proposed class action, a district court has "discretion to consider the merits of the claims before their amenability to class certification." *Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1211 n.1 (11th Cir. 2005) (quoting *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000)). In *Kehoe*, the district court granted summary judgment on the merits for the defendant without considering the plaintiff's motion to certify a class. The Eleventh Circuit said it was within the district court's discretion to proceed in that way. This order has taken the same approach, concluding, as set out above, that Ms. Knight's individual claim is unfounded. Here, as in *Kehoe*, this allows dismissal of the plaintiff's claim without otherwise addressing class certification.

Second, Ms. Knight's unique circumstances—her agreement to enter a plea before filing this action, and the imposition of a substantial prison term soon after—make her an inadequate class representative. And for these same reasons, her claim is not typical of the proposed class claims.

## VIII.  Mootness

Ms. Knight's individual claim became moot when she was sentenced to prison. The claim was unfounded, but not moot, when she filed this action.

That a named plaintiff's claim becomes moot after an action is filed does not, without more, render an entire class action moot. *See, e.g.*, *Stein v. Buccaneers Ltd. P'Ship*, 772 F.3d 698, 705-07 (11th Cir. 2014) (collecting cases). But as set out above, a class will not be certified in this case. In the absence of class certification, the mootness of Ms. Knight's claim requires dismissal of the action.

## IX.  Conclusion

For these reasons,

IT IS ORDERED:

1. The motion to certify a class, ECF No. 128, is denied.

2. The clerk must enter judgment stating, "The plaintiff Brittany Knight's claims against the defendant Sheriff of Leon County, Florida are dismissed as moot."

3. All other pending motions are denied as moot.

4. The clerk must close the file.

SO ORDERED on March 29, 2019.

s/Robert L. Hinkle_____
United States District Judge